U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR 03 2023
AT____O'CLOCK
John M. Domurad, Clerk - Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTINE RYDELEK
_____

                      Plaintiff(s)  )  Civil Case No.: 5:23-CV-286 (MAD/ML)
                                 )
  vs.                               )  **COMPLAINT PURSUANT**
                                    )  **TO THE AMERICANS**
                                    )  **WITH DISABILITIES ACT**
                    Defendant(s) )

MEDEBEST MEDICAL MANAGEMENT, INC.
_____

Plaintiff(s) demand(s) a trial by: ☒ JURY   ☐ COURT   (Select **only** one).

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1. This is a civil action seeking judgment, relief and/or damages brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended, for discrimination based upon a disability and the failure to accommodate same. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(4).

## PARTIES

2. a. Plaintiff: Christine Rydelek

    Address: 3645 Doyle Road

    Baldwinsville, New York.

    13027-9368

b. Plaintiff: _____

    Address: _____

Additional Plaintiffs may be added on a separate sheet of paper.

3. a. Defendant: MedBest Medical Management

   Official Position: _____

   Address: 251 Salina Meadows Parkway, Suite 100

   Syracuse, New York

   _____

   b. Defendant: _____

   Official Position: _____

   Address: _____

   _____

Additional Defendants may be added on a separate sheet of paper.

4. My disability is as follows:

   Depression and anxiety.

   _____
   _____
   _____
   _____
   _____
   _____

5. The conduct complained of in this action involves:
(Check all that apply)

    (A) ☐ Failure to employ.

    (B) ☐ Termination of employment.

    (C) ☐ Denial of participation in public service or program.

    (D) ☑ Failure to make alterations to accommodate disability.

    (E) ☑ Retaliation.

    (F) ☐ Other acts as specified below:

_____

_____

_____

6. **FACTS**

On the following page, set forth the facts of your case which substantiate your claim of discrimination. List the events in the order they happened, naming defendants involved, dates and places.

**Note:** Each fact should be stated in a separate paragraph; paragraphs should be numbered sequentially.

You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.

You may use additional sheets as necessary.

See attached.

## 7. PRAYER FOR RELIEF

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief:

1. VACATING, ANNULLING and/or SETTING ASIDE the EEOC's Determination

2. Directing the EEOC to issue a finding that MedBest engaged and is engaging in discrimination against the Plaintiff on the basis of the Plaintiff's disabilty.

3. Direct the EEOC to issue a finding that MedBest must provide Plaintiff a reasonable accommodation. 4. Award Plaintiff compensatory damages for pain and suffering.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 03·03·2023

_____
Signature of Plaintiff(s)
(all Plaintiffs must sign)

1. Plaintiff resides at 3645 Doyle Road, Baldwinsville, Onondaga County, New York, and is the Student Education Administrator employed by MedBest and assigned to University OB GYN at the State University New York Upstate Medical University in Syracuse, New York.
2. Respondent MedBest is a domestic not-for-profit corporation organized under the laws of the State of New York with an address of 60 Presidential Plaza, Suite 106, Syracuse, Onondaga County, New York.
3. Plaintiff is the Student Education Administrator employed by MedBest and assigned to University OB GYN at the State University New York Upstate Medical University in Syracuse, New York, and is the student Clerkship Coordinator supporting the Syracuse Clerkship Directors, Doctor John Folk, and Associate Clerkship Director, Doctor George Stanley. Doctor Folk writes Plaintiff's performance reviews, communicates with her on a daily basis, and is the most familiar with the operational needs of the Department. At all times relative hereto, Plaintiff resided, and resides, with her now ninety (90) year old mother. Plaintiff has suffered from anxiety disorder for over twenty (20) years, as documented by the medical records submitted with the original Complaint.
4. Plaintiff's position was, and is, focused primarily on communications with the student population, who are dispersed clinically throughout the campus. Consequently, her contacts, regardless of whether Plaintiff is on campus or not, are through Zoom calls, text messages, emails, and telephone conversations. Most pre-pandemic in-person clerkship activities have been, and continue to be, done remotely. When Plaintiff was physically present in the office in the West Tower of the campus pre-pandemic, she only saw Dr. Folk and Dr. Stanley occasionally when they were assigned to SUNY Upstate, and stopped by to see her. Otherwise, her communications with them were primarily via email.

5. In response to the onset of the COVID-19 pandemic in March, 2020, the former Department Chair, Doctor Robert Silverman, sent Plaintiff, and other employees, home on March 17, 2020. In June, 2020, while COVID-19 continued its spread, and fatalities were mounting, Plaintiff was instructed by MedBest to return to the campus on a full-time basis by June 15, 2020, which was extended to July 6, 2020. When Plaintiff objected, MedBest agreed that Plaintiff could come into the office on Tuesdays and Thursdays, and work from home Mondays, Wednesdays, and Fridays.

6. When she returned to the campus, Plaintiff noticed that COVID-19 safety protocols were not being followed in her building, and throughout the campus, and became concerned that she would become infected, thereby placing her elderly mother at great risk. Consequently, her anxiety began to increase significantly. Plaintiff also found that her physical presence on Thursday was unnecessary, as she could accomplish the same tasks working from home, as she did in April, May and June. In light of the above, Plaintiff spoke to Doctor Folk about only coming in on Tuesdays, thereby reducing her potential exposure to COVID-19, and he was receptive to the arrangement given the circumstances. As a result, Plaintiff began coming in to the office on Tuesdays, unless she was needed for in-person orientation, or other clerkship activities.

7. On July 22, 2020, Plaintiff sent Lisa McNish ("McNish"), the new Department Administrator, an email explaining, as she did to Doctor Folk, why she was present only on Tuesdays, unless otherwise required: safety protocols were not being followed on campus; she was not accomplishing anything on Thursdays which she couldn't otherwise do remotely; she was reducing her exposure to COVID-19, thereby lessening the infection risk to her mother; and, her anxiety level on Thursdays spiked as she witnessed traffic not following safety protocols in her immediate office area. Consequently, Plaintiff requested that she be allowed to work remotely other than Tuesdays, and other days for required in-person orientation, or other clerkship activities.

8. On July 23, 2020, McNish responded, and indicated that, to "be fair to all of the other staff reporting daily", other than unspecified "exceptions", Plaintiff was required to be

physically present on Tuesdays and Thursdays, with "the expectation that [Plaintiff would] return 100% by August 31ˢᵗ." This "expectation" was put on Plaintiff. and not communicated to her co-workers. McNish stated that she was not questioning Plaintiff's work ethic or dedication to the Department. McNish addressed Plaintiff's increasing anxiety by sarcastically stating "perhaps you should utilize our EAP [Employee Assistance Program] benefit to help cope with these strange times." McNish concluded by telling Plaintiff she should "reconsider" her career choice if she was uncomfortable working in the health care industry.

9. On that same day, Plaintiff responded, again citing the Department's utter failure to follow COVID-19 safety protocols, indicating that it was unfair that another Department employee, "Sunny", had been allowed to work remotely, and that she would be submitting a letter from her physician opining that her anxiety should be accommodated by telework. McNish returned Plaintiff's email, conceding exceptions to full-time attendance were "made to [unspecified] staff based on [unspecified] personal circumstances", and that MedBest had "been accommodating [Plaintiff's] requests based upon [her] circumstances, but [couldn't] continue to operate in [that] fashion as a department." Finally, McNish stated that MedBest still had no COVID-19 safety plan in place over four (4) months after the Governor had declared a health emergency.

10. On July 29, 2020, Plaintiff provided McNish, with a copy to Doctor Folk and Sheila Miles ("Miles"), MedBest's Director of Human Resources, with a letter from her physician, Doctor Anthony Malvasi of CNY Family Care, stating "[p]lease allow [Plaintiff] to work from home due to medical reasons."

11. In response to Doctor Malvasi's opinion letter, Chiristine was contacted on July 30, 2020 by Eileen Roosa ("Roosa"), Human Resources Assistant for MedBest, concerning next steps in Plaintiff's request for a reasonable accommodation. On July 31, 2020, Plaintiff and Roosa had a telephone conversation, and Roosa provided Plaintiff with MedBest's Request to Accommodate forms.

On August 21, 2020, Miles sent an email to Plaintiff stating:

> The decision to allow or deny continued remote work is determined by each department and their specific operational needs. Therefore, your department and your Supervisor is (sic) responsible for determining what is required of their employees, which may or may not align with any other department on campus or anywhere in the country. The decision for your employment location resides with your Supervisor.

12. On September 22, 2020, Doctor Malvasi drafted another opinion letter setting forth Christian's history of anxiety and depression, which had been periodically treated with medication and therapy. Because of Plaintiff's role of caretaker for her mother, Doctor Malvasi opined that MedBest's requirement that Plaintiff be physically present in the office exacerbated Plaintiff's underlying conditions of anxiety and depression, and her "symptoms have continued to escalate, and new issues have arisen, as a result of her being instructed to return to the office full-time." Those symptoms included seizing of her back, necessitating resumption of visits to her chiropractor, a clenched jaw during the night and most of the day, and insomnia from the increased stress and anxiety where Plaintiff was only able to sleep two (2) hours a night. As a result, Plaintiff was unable to enjoy daily life activities during the summer. Doctor Malvasi then opined that a return to the campus "would exacerbate [Plaintiff's] physical and mental conditions, and that the accommodation of telework would help alleviate her symptoms."

13. On October 1, 2020, Plaintiff submitted the Reasonable Accommodation Request Form to Miles which stated she could perform the essential functions of her job at University OB GYN, but that being physically present at the campus made it more difficult to concentrate, and exacerbated her stress and anxiety, resulting in physical symptoms. Plaintiff cited the fact that she performed at a very high level from home during the pandemic closure, and telework would be a reasonable accommodation. Plaintiff attached Doctor Malvasi's September 22, 2020

opinion letter.

14. On October 9, 2020, Miles sent Plaintiff an email questioning Dr. Malvasi's opinion. Miles misunderstood the opinion letter as she thought Dr. Malvasi was not aware Plaintiff was teleworking. However, Doctor Malvasi's letter states that Plaintiff's increased symptoms were the result of MedBest's *stated requirement* that she return to work full-time, and the denial of her request to telework. Miles goes on to question Plaintiff's claim of disability based upon that misunderstanding: "can you please explain how or why conditions or symptoms would increase over this period of time that we have allowed the accommodation to work remotely?" Finally, Miles indicates that no decision on Plaintiff's request for a reasonable accommodation would be made until January, 2021.

15. On October 30, 2020, Plaintiff submitted an opinion letter from Doctor Malvasi from that same date, which attempted to clear up Miles' misunderstanding of the cause of Plaintiff's increasing symptoms:

> Ms. Rydelek has been working primarily from home and going into work periodically as needed. It is our understanding that [Plaintiff's] request for a reasonable accommodation has not been granted and she has been "allowed" to do telework from home. As indicated in our previous letters, *failure to approve Ms. Rydelek's request for reasonable accommodation, in itself, has caused an exacerbation of her anxiety and depression, and the seizing of her back. The prospect of her returning to work is afflicting her health and a return to work would obviously increase and worsen the severity of those symptoms.*

(emphasis added).

16. On November 3, 2020, Miles responded, continuing to question Plaintiff's claim of disability, and attaching a HIPAA Release Authorization. Miles indicated she would be contacting Plaintiff's physician directly "to determine [her] return to work status." However, under the New York Authorization for Release of Health Information Pursuant to HIPAA, Miles was expressly prohibited from speaking

to Plaintiff's physician: **"THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9(b).** On November 24, 2020, Rydelek responded that she believed the letters from Doctor Malvasi were sufficient, but she would nevertheless request her medical file from her physician and provide it to Miles.

17. On November 24, 2020, Miles requested the signed HIPAA Authorization, stated that Plaintiff's documentation was insufficient, and threatened to revoke Plaintiff's temporary telework arrangement: "[i]f you are interested in continuing to benefit from the current accommodation, please return said release as soon as possible."
18. On November 25, 2020, Plaintiff told Miles that she had requested her medical file from Doctor Malvasi in September, had not yet received it, and would follow-up. Plaintiff also indicated that she was not comfortable with Miles speaking to her physician directly, and that the HIPAA release would not speed things up as she had already requested her records two (2) months prior.
19. On November 27, 2020, Miles responded: "[u]ntil I am able to obtain the requested information any determination of possible accommodation that you have requested cannot be made."
20. On January 25, 2021, Plaintiff provided Miles with her medical file, which documented Plaintiff's twenty (20) year battle with depression and anxiety, her medication, her physical symptoms, including insomnia and sleep pattern disturbances, and that each spike in her symptoms was situational, which in this case was MedBest's constructive denial of her request for reasonable accommodation, and continued insistence that Plaintiff return to the campus full-time on a date certain. The medical records support Doctor Malvasi's opinion that MedBest's "failure to approve Ms. Rydelek's request for reasonable accommodation, in itself, has caused an exacerbation of her anxiety and depression, and the seizing of her back. The prospect of her returning to work is afflicting her health and a return to work would obviously increase and worsen the severity of those

symptoms", and a return to the campus "would exacerbate [Plaintiff's] physical and mental conditions, and that the accommodation of telework would help alleviate her symptoms."

21. On March 19, 2021, Miles, after expressly and repeatedly requesting supporting medical documentation from Plaintiff, inexplicably said:

> I have removed the medical information contained in your [January 25, 2021] email below. I have also destroyed the medical documentation that you submitted as an attachment, as HR is not responsible to interpret or maintain your medical records. Five months ago, on November 3, 2020, I sent you a HIPAA Release Authorization, which you have refused to complete. If you continue to refuse this request, you will be required to return to work in person, and report to the office as all others in the department have been required to do.

This email flies in the face of Miles previous October 9, 2020 email where she interpreted Doctor Malvasi's opinion letter: "can you please explain how or why conditions or symptoms would increase over this period of time that we have allowed the accommodation to work remotely?"; her November 3, 2020 email where she indicated she would be contacting Plaintiff's physician directly "to determine [her] return to work status"; and, her November 24, 2020 email where she again stated Plaintiff's documentation was insufficient to establish a disability requiring a reasonable accommodation.

22. On March 26, 2021, Plaintiff provided Miles with the signed HIPAA Authorization, and a March 25, 2021 opinion letter from Doctor Malvasi, which states, in pertinent part: "Ms. Rydelek suffers from situational anxiety triggered by increased stressors in her workplace, and it is my medical opinion that she should be allowed to telework as a reasonable accommodation for her disability." Plaintiff heard nothing from Miles over the next six (6) months concerning her request for a reasonable accommodation.

23. On July 30, 2021, McNish told Plaintiff that she was required to physically return to the office on October 4,

2021. McNish said nothing about Plaintiff's request for a reasonable accommodation.

24. Having heard nothing from Miles for six (6) months concerning her request for a reasonable accommodation, on September 27, 2021, Plaintiff emailed Miles chronicling her efforts to engage in the interactive process, advising her that the fourteen (14) month delay in making a determination on her request for a reasonable accommodation could be considered a violation of the ADA, and demanding a decision on her request before October 4, 2021.

    On October 1, 2021, Miles responded:

    > Thank you for the reminder of the interactive process that has taken place. I have reviewed the file documentation, and have determined that your request to continue to work remotely is denied. Your job responsibilities require your presence in the office and your absence has created undue hardship by burdening other staff with your job responsibilities.

    Miles doesn't, and never has, identified the "other staff" who were "burdened" by Plaintiff's telework arrangement. Perhaps more significantly, the only documentation Miles had in her file was Doctor Malvasi's letters of July 27, 2020, September 22, 2020, October 30, 2020 and March 25, 2021, and Plaintiff's medical records submitted to Miles on January 25, 2021. Despite Miles' repeated statements that she could not make a decision on Plaintiff's request for reasonable accommodation without the HIPAA form and the records produced pursuant to it, Miles *never submitted the HIPAA form to Doctor Malvasi or Central New York Family Care. Exhibit C.* Miles earlier March 19, 2021 statement that "HR is not responsible to interpret…your medical records" is simply untrue, as she did just that.

25. On October 4, 2021, Plaintiff told Miles she could not report to work as she suffered a panic attack getting ready for work, which included shortness of breath, headache, lightheadedness, nausea, abdominal pain, hot flashes, and an overwhelming sense of anxiety. In the run-up to the October 4, 2021 mandatory report date after Miles' denial, Plaintiff experienced insomnia, headaches, digestive

difficulties, and the seizing up of her neck and back, limiting her mobility. The onset of these situational conditions is supported, and evidenced, by Plaintiff's medical records, and Doctor Malvasi's opinion.

On that same day, Miles responded:

> The schedule for each employed individual is determined by the Department's management, and is based on operational need. Your position is not a remote work position. You are required to fulfill the duties and obligations of your position by working on location. If you choose not to present to work as required tomorrow, you are effectively resigning your position.

Not once in the email does Miles reference Plaintiff's documented disability. She simply summarily dismisses it as a factor in determining whether Plaintiff should return to the campus, or not.

24. On October 4, 2021, Doctor John Folk, Plaintiff's immediate supervisor, sent Miles an email indicating that the Clerkship Program would be "effectively shut down" and "dead in the water" if Miles' threat of terminating Plaintiff ("constructive resignation") came to fruition. *Exhibit D*. Doctor Folk goes into great detail, which is not repeated here, about the myriad of tasks successfully managed, and completed, by Plaintiff which kept, and keeps, the Clerkship Program running. Addressing Plaintiff's telework status, Doctor Folk states:

> [F]rom where I sit as the Director of the Clerkship, we have not suffered any lack of support I expect from the Administrative Manager (i.e. Plaintiff). Feedback from students since the start of the [pandemic] about Plaintiff's performance, both in Likert-type numeric and narrative evaluation has been excellent. The Clerkship, the students finishing rotation, the students about to start rotation, and I would be most grateful if what I said above were given consideration.

*Id.*

25. On October 12, 2021, Plaintiff, McNish, Doctor George

Stanley, and Shaleen Breed, Billing Operations Manager, met to discuss future plans for Plaintiff's workplace arrangement. The meeting was summarized in a October 19, 2021 email from McNish to Miles. Although a compromise was reached where Plaintiff could continue working from home, provided she return to campus for Clerkship activities, her "telecommuting situation" would be revisited in January, 2022. Consequently, Plaintiff's request for reasonable accommodation due to her disability remains denied by MedBest.

26. On June 13, 2022, Plaintiff timely filed her Complaint against MedBest with the New York State Division of Human Rights and EEOC charging Medbest with an unlawful discriminatory practice relating to employment because of disability, and opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15.

27. On July 14, 2022, MedBest submitted its Response to the Complaint. MedBest concedes in its Response that Plaintiff suffers from a disability.

28. On July 29, 2022, Plaintiff filed her Rebuttal to MedBest's Response.

29. On August 2, 2022, Plaintiff received a notice of Complainant Only Telephone Conference from NYSDHR for September 8, 2022.

30. On September 7, 2022, Plaintiff submitted additional evidence to the NYSDHR in support of her clams of disability discrimination, and retaliation.

31. Plaintiff established a *prima facie* case of discrimination as she demonstrated: (1) she is a person with a disability under the meaning of the ADA; (2) Respondent MedBest is covered by the statute, and had notice of her disability; (3) with reasonable accommodation, Plaintiff could perform the essential functions of her job; and (4) Respondent MedBest refused to make such accommodations.

32. Respondent MedBest failed to demonstrate: (a) that making the reasonable accommodation would cause it hardship, and (b) that the hardship would be undue.

33. On September 8, 2022, a telephone conference was held between Plaintiff, her counsel, and Jami Kaplan, Human Rights Specialist II, wherein Plaintiff reiterated and supported her claims against MedBest.

34. On September 9, 2022, NYSDHR Regional Director Julia B. Day signed a Determination and Order After Investigation (the "Determination") that there was "NO PROBABLE CAUSE to believe that [MedBest] engaged in or is engaging in the unlawful discriminatory practice complained of." *Exhibit A*. The Determination was postmarked September 12, 2022, and received by the Respondent on September 15, 2022.
35. However, NYSDHR found that it was "troubling that Complainant's reasonable accommodation request was denied on October 1, 2021, without any further interactive process [by MedBest] or without [MedBest] establishing the existence of an undue hardship."
36. On December 1, 2022, the EEOC issued a "Determination of Charge" which adopted the findings of the NYSDHR.
37. On December 5, 2022, Plaintiff received the "Determination of Charge."

4



**Division of Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

CHRISTINE MARY RYDELEK,
                           Complainant,

v.

MEDBEST MEDICAL MANAGEMENT, INC.,
                           Respondent.

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10217918

Federal Charge No. 16GC202941

On 6/13/2022, Christine Mary Rydelek filed a complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

Investigation did not disclose sufficient evidence to support the allegations of unlawful discrimination that are contained in the complaint. Complainant is employed by Respondent and is leased through a staffing agreement to SUNY Upstate Medical University's ("Upstate Medical") OB GYN department. The Director of Human Resources involved in this complaint is employed by Respondent; the Practice Administrator also directly involved in this matter is not Respondent's employee, but rather, is employed by Upstate Medical. Investigation showed that Complainant began working remotely due to the Covid pandemic on March 17, 2020; administrative staff were asked to return in July 2020, and Complainant returned for a brief period of time before she again returned to remote work. Complainant initially requested to continue working remotely due to Upstate Medical's alleged failure to abide by Covid guidelines; she then requested an accommodation due to anxiety, which she formally submitted to Respondent on October 1, 2020. Investigation showed that there was communication between Complainant and Respondent's Director of Human Resources regarding medical information for

a few months after that, but then there was no communication for several months, until Complainant asked about the status of her reasonable accommodation request on September 27, 2021; it is noted that on July 30, 2021, Complainant was informed by Upstate Medical's Practice Administrator that she was to report to the office in person beginning October 4, 2021.

Investigation showed that On October 1, 2021, Respondent's Director of Human Resources denied Complainant's reasonable accommodation request, stating that Complainant's presence in the office was required and that her absence created undue hardship by burdening other staff with her job responsibilities. While Complainant's request was not granted and was formally denied on October 1, 2021, Complainant continued to be allowed to work from home even though no decision had been made on her request. Investigation showed that the only times Complainant had to come to work in person was for student orientations; Complainant stated at fact-finding that she was, and continues to be, comfortable conducting in-person orientation with students in academic buildings [as opposed to the medical building where she had worked], and that she wants to continue to do in-person student orientations. Investigation showed that Complainant attempted to return to work on October 4, 2021, but had a panic attack; Complainant was then told that if she did not return to work the next day, she would be effectively resigning. However, Complainant continued to work remotely with no adverse employment action taken against her. While it is troubling that Complainant's reasonable accommodation request was denied on October 1, 2021, without any further interactive process or without establishing the existence of an undue hardship, there is insufficient evidence to support a violation of the NYS Human Rights Law. Investigation showed that Complainant was not forced to return to work since July 2020, and on October 8, 2021, approximately a week after the denial, Upstate Medical's Practice Administrator reached out to Complainant to schedule a meeting, which was held a few days later; less than 3 weeks after the denial, on or about October 19, 2021, the Practice Administrator informed Respondent's Director of Human Resources that an arrangement was reached that allowed Complainant to continue to work remotely, with the understanding that she will attend orientation sessions held in academic buildings in person as well as any other department obligations requiring in person attendance. While the agreement was reached with Upstate Medical, there is no allegation that Respondent attempted to interfere or alter the agreement. Although the email documenting this compromise indicated the telecommuting situation will be revisited in January 2022, as of September 2022, Complainant continues to work remotely without issue. Complainant confirmed during fact-finding that she is satisfied with the way things are currently and that she has not had to return to a medical building since July 2020.

Investigation further showed that Complainant's allegations of retaliation (proposed office move and computer move) are untimely complained of. While Complainant asserts that a coworker was allowed to work remotely for childcare reasons in 2020, which may be noted occurred prior to the availability of vaccinations, Complainant was also allowed to work remotely for an extended period, despite the October 1, 2021 denial. Complainant maintains that even though she has been allowed to work remotely; however there is still a denial of her reasonable accommodation request and she could be told to come into work at any time. However, if Respondent revoked Complainant's ability to work remotely, she still has the option to pursue a complaint with the NYS Division of Human Rights at that time. Investigation did not reveal sufficient evidence to support a conclusion that Complainant was denied equal terms, conditions and privileges of employment because of her disability and/or alleged opposition to discrimination. Therefore, there is no probable cause to support the allegations of the complaint.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under the Americans with Disabilities Act (ADA). Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:  SEP 0 9 2022
Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: *Julia B Day*
Julia B. Day
Regional Director

- 3 -



New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/01/2022

**To:** Christine Rydelek
3645 Doyle Road
Baldwinsville, NY 13027

Charge No: 16G-2022-02941

EEOC Representative and email:   Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
12/01/2022

Timothy Riera
Acting District Director

251 Salina Meadows Parkway
Suite 100
North Syracuse NY 13212

Please retain this notice for your records.